OPINION OF THE COURT
Bernard F. McCaffrey, J.
The issues presented in this matter are of significance and of first impression in that they effect matrimonial actions in which a determination is to be made granting equitable distribution and/or distributive award and/or maintenance and support.
This matrimonial action was commenced under the equitable distribution law effective on July 19, 1980, wherein part B of section 236 of the Domestic Relations Law applies and in which there has been no appearance or answer by the defendant. The summons and pleadings served by the plaintiff wife in this case specifically reflect that the plaintiff is seeking, in addition to other relief, the equitable distribution of the marital property. In addition, as to the marital residence presently occupied solely by the defendant husband, the plaintiff wife in her summons specifically seeks exclusive possession of same, and in the complaint seeks exclusive use and occupancy of the mari *676 tal domicile and its contents, together with title to said domicile and its contents.
At the outset the court finds that, where there is a default by a party in a matrimonial action seeking equitable distribution, the court may provide for the equitable distribution of marital property at an inquest without any further hearing. The court further finds that it is under a mandate pursuant to section 236 (part B, subd 5, par d, cl [6]) of the Domestic Relations Law to determine the respective rights of the parties in their separate or marital property, notwithstanding the fact that one of the parties has defaulted. For to do otherwise, simply because one side defaults, would give to the party choosing not to appear an advantage in defaulting and constitute a prejudice to the party seeking equitable distribution.
In determining an equitable disposition of property the court, pursuant to section 236 (part B, subd 5, par d) of the Domestic Relations Law, must consider the following factors:
“(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;
“(2) the duration of the marriage and the age and health of both parties;
“(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;
“(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;
“(5) any award of maintenance under subdivision six of this part;
“(6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;
“(7) the liquid or non-liquid character of all marital property;
*677 “(8) the probable future financial circumstances of each party;
“(9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;
“(10) any other factor which the court shall expressly find to be just and proper.”
The statute makes no distinction between a contested matter and one in which there has been a default by one of the parties. The court appears to be required, even where there is an inquest taken on the nonappearance of a party, to consider the above factors when it equitably disposes of marital property in the final judgment. Indeed, the court must set forth the factors it considered and the reasons for its decision, and such may not be waived by either party or counsel. (See Domestic Relations Law, § 236, part B, subd 5, par g.)
Likewise, with respect to an award of mainténance the statute provides in section 236 (part B, subd 6) of the Domestic Relations Law as follows:
“6. Maintenance, a. Except where the parties have entered into an agreement pursuant to subdivision three of this part providing for maintenance, in any matrimonial action the court may order temporary maintenance or maintenance to meet the reasonable needs of a party to the matrimonial action in such amount as justice requires, having regard for the circumstances of the case and of the respective parties. In determining reasonable needs the court shall decide whether the party in whose favor maintenance is granted lacks sufficient property and income to provide for his or her reasonable needs and whether the other party has sufficient property or income to provide for the reasonable needs of the other. In determining the amount and duration of maintenance the court shall consider:
“(1) the income and property of the respective parties including marital property distributed pursuant to subdivision five of this part;
*678 “(2) the duration of the marriage and the age and health of both parties;
“(3) the present and future capacity of the person having need to be self-supporting;
“(4) the period of time and training necessary to enable the person having need to become self-supporting;
“(5) the presence of children of the marriage in the respective homes of the parties;
“(6) the standard of living established during the marriage where practical and relevant;
“(7) the tax consequences to each party;
“(8) contributions and services of the party seeking maintenance as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;
“(9) the wasteful dissipation of family assets by either spouse and
“(10) any other factor which the court shall expressly find to be just and proper.”
It is noted here, too, with the question of maintenance, just as with the equitable disposition of marital property, where the court is required to determine the amount and duration of maintenance, it must consider certain factors in its determination. The exception here too exists when there is an agreement between the parties pursuant to section 236 (part B, subd 3) of the Domestic Relations Law.
Section 236 (part B, subd 7) of the Domestic Relations Law deals with child support and provides in part as follows:
“7. Child Support, a. In any matrimonial action, or in an independent action for child support, the court as provided in section two hundred forty of this chapter may order either or both parents to pay temporary child support or child support. The court shall not consider the misconduct of either party but shall make its award for child support after consideration of all relevant factors, including:
*679 “(1) the financial resources of the custodial and noncustodial parent, and those of the child;
“(2) the physical and emotional health of the child, and his or her educational or vocational needs and aptitudes;
“(3) where practical and relevant, the standard of living the child would have enjoyed had the marriage not been dissolved;
“(4) where practical and relevant, the tax consequences to the parties; and
“(5) the non-monetary contributions that the parents will make toward the care and well-being of the child.”
In view of the requirements imposed upon the court by the provisions of subdivisions 5, 6 and/or 7 of part B of section 236, it becomes apparent even in a situation where there is a defaulting party that the record established must be at least as extensive to permit the court to make its determination based upon its consideration of the aforesaid factors as they apply to the relief granted.
With this in mind, then, prior to the inquest being taken the court required the plaintiff to submit a statement of particulars fairly tracking the subject matter which makes up the factors required to be taken into consideration. The plaintiff at the inquest then submitted into evidence her statement of particulars and testified along the lines of the provisions of section 236 (part B, subds 5, 6, 7) of the Domestic Relations Law so that the court would have for its consideration a record complete enough to comply with the aforesaid statutory requirements. It is upon just such a record that the court bases its decision in this case.
The summons and complaint which were introduced into evidence reflect that the plaintiff seeks a judgment of absolute divorce based upon alleged cruel and inhuman treatment, as well as the following additional relief:
(1) Alimony (maintenance);
(2) Child support;
(3) Counsel fees;
(4) Custody of the infant issue;
*680 (5) Exclusive possession of the marital abode;
(6) Equitable distribution of the marital property;
(7) Permission to resume use of the maiden name;
(8) Such other and further relief as to the court may seem just and proper.
Plaintiff and defendant were married on or about August 30, 1969 in Queens, New York. There are two children of the marriage whose names are: Jason, age 8 and Brian, age 5. The parties were both over the age of 21 years when the action was commenced, and at the time of the commencement of this action and for a continuous period of at least one year immediately preceding such commencement, the plaintiff and defendant resided in this State, and the cause occurred in this State. Inquest was held on December 22, 1980.
The plaintiff testified as to all the allegations contained in the complaint and has sustained hér cause of action for a divorce based upon the cruel and inhuman treatment by the defendant so as to render it unsafe and improper for the plaintiff to cohabit with the defendant.
The plaintiff is entitled to a judgment of divorce and, in addition, is entitled to the following relief:
Plaintiff is awarded custody of the infant issue of the marriage. Plaintiff is also awarded exclusive use and occupancy of the marital residence located at 577 Sandhill Road, Wantagh, New York, and its contents, together with title to said contents. Upon the death or remarriage of the plaintiff, or upon the emancipation of the infant issue, the marital residence shall be sold and the net proceeds after sale shall be divided between the plaintiff and the defendant as follows: 75% to the plaintiff, and 25% to the defendant. The net proceeds shall be understood to be the proceeds remaining after costs of sale, such as broker’s commission and attorney fees, and credit to the plaintiff for reduction of amortization costs, and for all repairs and improvements, provided plaintiff can show proof of payment of same.
The defendant shall have visitation with the infant issue away from the custodial residence during the following periods:
*681 A. One day, either Saturday or Sunday, for the entire day from 10:00 a.m. to 6:00 p.m.;
B. One extra day during the school holidays at Easter and Christmas;
C. The entire month of either July or August; and
D. In the event that the plaintiff and infant issue remove their residence from the State of New York, then defendant shall have the right of one month’s visitation in New York on 30 days’ notice to plaintiff, the expenses of all visitation, to wit, transportation, etc., shall be borne by the defendant. Said visitation shall not, however, interfere in any way with school attendance of the infant issue.
The defendant shall pay to the plaintiff the sum of $40 per week as maintenance, plus the sum of $80 per week ($40 per week per child) as maintenance and support of the infant children. Maintenance shall be paid until the plaintiff remarries, dies, or until the children are emancipated, whichever occurs first.
Plaintiff is entitled to a counsel fee in the amount of $1,250, payable as follows: 50% within 30 days of service upon defendant of a copy of the judgment to be entered herein; the balance within 30 days thereafter.
The plaintiff is 34 years of age, the defendant is 38 years of age and the health of both is good. There are two children of the marriage, aged 8 and 5, as previously noted, and both are in good health.
The defendant is employed by M & H Mfg. Co., Inc., as a supervisor, and earns a gross salary of approximately $350 per week, and a net salary of approximately $278 per week. The plaintiff is presently employed by Play-world on a part-time basis, and earns a gross salary of approximately $60 per week, and a net salary of $50 per week.
*682 The plaintiff estimates her weekly expenses as follows:
Rent, realty taxes, mortgage interest & amortization $75.00
Insurance on realty 5.00
Car insurance 5.00
Fuel (oil) 25.00
Food 75.00
Utilities (Elec., water, telephone) 35.00
Clothing 10.00
Medical & dental 10.00
Gasoline 20.00
Newspapers 5.00
TOTAL $265.00
The plaintiff and defendant are tenants by the entirety of a house located at 577 Sandhill Road, Wantagh, New York, which is marital property. The house was purchased July 28, 1977; the purchase price was $35,800 and the parties obtained a mortgage in the amount of $18,000. The balance was paid by obtaining a loan from the plaintiff’s mother, in the amount of $10,000, and $7,000 came from a separately owned bank account of the plaintiff. The house has an approximate current value of $45,000, and an existing mortgage in the approximate amount of $16,500.
Considering the above, and the contribution made by the plaintiff as a housewife and part-time salaried employee, and by the defendant as the prime economic supporter during this time, the court orders the distribution of net proceeds upon sale of the marital residence on a basis of 75% to the plaintiff, and 25% to the defendant, as aforesaid.
The plaintiff testified regarding a bank account in the amount of $11,000 previously held jointly with the defendant. Said account has been transferred to a bank account in the name of the plaintiff’s mother. It is undisputed that $5,000 of this amount was paid to the plaintiff as compensation for injuries received in an automobile accident. As such, the $5,000 is not marital property (Domestic Relations Law, § 236, part B, subds 5, 1, par d, cl [2]). The balance was money that plaintiff said she had saved through her own efforts, both prior to and during the *683 marriage. The portion attributed by the plaintiff to have been money saved during the marriage is found to be marital property. However, inasmuch as the court finds that the money transferred to plaintiff’s mother was to compensate her for money she had previously loaned to the parties, and to compensate her for necessaries provided to plaintiff and her children during the pendency of this action, the court further finds that defendant husband has no claim to his share of this marital property.
The defendant shall transfer to the plaintiff, at his option, the ownership of one of the two 1968 Chevrolet Impala automobiles.
Defendant shall also maintain all existing medical, dental and/or health insurance for the benefit of the infant issue of the marriage, to the extent that same is presently afforded through defendant’s employment.
The immediate tax consequences to the parties are as follows: Plaintiff is expected to seek further and fuller entry into the employment market as the children both enter and progress in school. Her own income from employment and her maintenance will constitute taxable income to her. The defendant will be able to claim the amount paid as maintenance to the plaintiff as deductible expense, and will be allowed a personal exemption for the children, based upon the amount paid as child support.
Pursuant to the requirements contained in section 236 (part B, subds 5, 6, 7) of the Domestic Relations Law, the court based its determination herein upon the record and foregoing pertinent factors, which are not in dispute.